TYGERT-ALLEN FERTILIZER CO. v. HAGAN.

(District Court, E. D. Pennsylvania. August 20, 1900.)

No. 67.

SHIPPING—UNSEAWORTHINESS OF LIGHTER—LIABILITY OF OWNER.
    Evidence *held* to establish the unseaworthiness of a barge let by its owner to perform lighterage service, and to render its owner liable for the loss resulting to the hirer by its sinking at the dock after being loaded.

In Admiralty. Suit for damages resulting from unseaworthiness of lighter.

Horace L. Cheyney and John F. Lewis, for libelant.
John A. Toomey, for respondent.

McPHERSON, District Judge. Early in July, 1898, the steamship Scotia brought to the port of Philadelphia a cargo of kainit,—a min-

eral used in the manufacture of fertilizers,—consigned to the libelant, and deliverable from the ship's side. The ship was moored at pier 43, and in order to move the cargo to the libelant's factory it was necessary to employ barges, and among these the Samuel F. Houseman, a barge belonging to the respondent, was hired by the libelant on July 3d. Loading was begun on the afternoon of that day, and finished about 10 o'clock at night. The following day was the 4th, and the barge remained alongside the ship until late in the evening,—perhaps 10 or 11 o'clock,—when she sank in her berth, thus causing a total loss of the mineral. The libelant avers that the barge was unseaworthy, and brings the action upon this ground.

The first defense is that the barge was not hired to the libelant, but to the Philadelphia Lighterage Company, from whom the libelant had hired two or three other barges to carry a part of the cargo. I do not think that the testimony establishes this defense. It is true that Mr. Brown, with whom the contract of hiring was made by the respondent, was an employé of the lighterage company, but he did not make the contract in this capacity. On the contrary, he was acting for the libelant at the express request of its shipping clerk, and, in my opinion, he disclosed his agency to the respondent, and hired the barge, not for the lighterage company, but for the libelant. Upon this point—the disclosure of his agency—the testimony is in conflict, but I find the fact to be as just stated.

A second defense is that the libelant expressly agreed to take the barge at its own risk. This position is based upon a misunderstanding of the testimony. The libelant did agree with Mr. Brown that, if he would hire the barge from the respondent, the libelant would take the boat at its own risk; but this agreement was only intended to relieve, and only did relieve, the lighterage company from liability. It was not made with the respondent, nor intended to affect him, and therefore has no bearing on the present controversy.

The third and principal defense is that the libelant, whose duty it was to furnish a tug to move the barge, was negligent in permitting the boat to remain in a comparatively narrow dock for more than a day after loading had been finished; and that, in consequence of such negligence, the barge was injured and sunk by being squeezed between the Scotia and another steamship on the opposite side of the dock during a violent windstorm on the afternoon of the 4th. It is true that a severe storm of wind and rain passed over the vessels at this time, but I have a good deal of doubt whether, in the sheltered position of the steamships and of the barge, any serious injury could have been done to either by the wind. It is not necessary, however, to decide this point, for it is abundantly clear to my mind that the storm had nothing to do with the sinking of the barge. The testimony of her captain, without which the squeezing theory must fail, is so contradicted that I can give it no credit. Without stopping to detail the evidence, it is enough to say that the decided weight of the testimony shows that the barge was leaking badly the whole day of the 4th, certainly for several hours before the storm began, and that continuous pumping without avail had been going on from some hour in the morning. What caused the leak does not appear. The

boat had been repaired not long before, but since then she had made three voyages, and what may have happened to her on these occasions is not disclosed. The important matter is that she was plainly not fit to receive the cargo of mineral when she was hired to the libelant.

There is not sufficient evidence to enable me to find the value of the kainit. If the parties can agree upon the sum, a decree for that amount may be entered, with costs; otherwise, a commissioner must be appointed.